IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02593-CMA-MEH

PETER P. MAUCHLIN,

      Plaintiff,

v.

BIER, SIS Correctional Supervisor,
A. OSAGIE, Physician Assistant,
DALGLEISH, EMT,
BARRY, Correctional Supervisor,
HAM, Correctional Officer,
JOHN DOE 1, Correctional Officer,
JOHN DOE 2, Medical Officer,

      Defendants.

---

## RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

**Michael E. Hegarty, United States Magistrate Judge.**

      Pending before the Court is Defendants' Motion for Summary Judgment [filed July 31, 2009; docket #172].  Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo. LCivR 72.1C, the motion is referred to this Court for recommendation.  (Docket #173.)  The matter is fully briefed, and oral argument would not materially assist the Court in its adjudication.  For the reasons set forth below, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED** as to Defendant Vanaman (EMT Dalgleish) and **DENIED** as to Defendants Bier, Osagie, Barry, and Ham.[1]

---

[1]Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  Fed. R. Civ. P. 72.  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to

I.     **Background**

Plaintiff initiated this *Bivens* action on December 13, 2007, and filed an Amended Complaint on March 31, 2008, which is the operative pleading.[2]   (Docket #31.)  Plaintiff alleges Defendants violated "various and numerous civil rights" when confining him in a "dry cell" for approximately four days from December 28, 2006 through December 31, 2006.  (*Id*. at 1.)  Plaintiff asserts the low temperatures and inadequate clothing and bedding of the dry cell caused him to become "seriously ill" for the two weeks following his dry cell confinement, in violation of his constitutional rights. Construing Plaintiff's Amended Complaint liberally, this Court infers Plaintiff's cause of action relies on the Eighth Amendment protection against cruel and unusual punishment.  (*See also* docket #191 at 1 (confirmation by Plaintiff of his Eighth Amendment claim).)

In sum, Plaintiff claims 1) Defendant Bier, SIS Correctional Supervisor, demonstrated deliberate indifference to the conditions of the dry cell causing Plaintiff to become ill (docket #31 at 2); 2) Defendant Osagie, Physician Assistant, failed to alleviate Plaintiff's illness by not providing specific medication or treatment and failed to take any actions to address the situation in which Plaintiff was placed (*id*. at 3); 3) Defendant Dalgleish, EMT, demonstrated deliberate indifference

---

proposed findings and recommendations contained in this report may bar the party from a <u>de</u> <u>novo</u> determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

[2]*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

to the increased risk to Plaintiff's health posed by the conditions of the dry cell (*id*. at 4);[3] 4) Defendant Barry, Correctional Supervisor, and Defendants Ham and John Doe 1, Correctional Officers watching the dry cell, demonstrated deliberate indifference to Plaintiff's complaints requesting adequate warmth and clothing by not providing such items (*id*. at 4-6); and 5) Defendant John Doe 2, Medical Officer, showed deliberate indifference to the alleged risk posed to Plaintiff's health by the low temperature of the dry cell (*id*. at 6).  Plaintiff requests certain monetary amounts from each Defendant, for alleged compensatory and punitive damages.

Plaintiff admits his confinement in the dry cell resulted from an X-ray of Plaintiff's abdomen, "which appeared to show a small metallic item of suspected contraband."  (Docket #31 at 2.)  Plaintiff alleges the purpose of the confinement was to "cause extreme discomfort/pain and suffering and thereby promote the rapid, expeditious recovery of suspected contraband by way of defecation."  (*Id*.)  Plaintiff describes the conditions of the dry cell as low temperatures "averaging 40°-45°F," inadequate clothing consisting of a T-shirt and "boxer style under shorts," and thin bedding for the mattress mounted on concrete.  (*Id*.)  Plaintiff contends these conditions caused him to become seriously ill shortly after being released from the dry cell.  (*Id*.)

Defendants answered Plaintiff's Amended Complaint on May 30, 2008, asserting Plaintiff failed to state a claim upon which relief can be granted; Plaintiff failed to properly exhaust administrative remedies and other provisions as required by the Prison Litigation Reform Act (PLRA); each Defendant is entitled to qualified immunity; Plaintiff's claims are barred in whole or part by the applicable statute of limitations; and Defendants did not violate Plaintiff's constitutional rights. (Docket #40.) Defendants then filed a Motion for Summary Judgment Based on Exhaustion,

---

[3]Defendants state Defendant Dalgleish is now Defendant Vanaman, and the correct spelling of her former last name is Dagliesh.  (Docket #172 at 1 and n.1.)

asserting Plaintiff did not exhaust the administrative remedies as required by the Prison Litigation Reform Act and federal regulations.[4]  This Court recommended the motion be denied, and the District Court adopted this Court's recommendation on November 4, 2008.  (Docket #75.) Defendants filed a second Motion for Summary Judgment, which is presently before the Court for recommendation.  (Docket #172.)

In their second Motion for Summary Judgment, Defendants assert that each of the named Defendants is entitled to qualified immunity.  Defendants further argue that no genuine dispute exists as to any material fact in this matter, and Plaintiff fails to establish the elements of an Eighth Amendment claim.  (Docket #172 at 1.)  Plaintiff offers a response, addressing each material fact proffered by Defendants, with a minor amount of legal analysis.  (*See* docket #185.)  In reply, Defendants counter Plaintiff's disagreement with certain facts in this matter, summarizing his "dispute" with the facts related to the temperature and conditions of the dry cell, Plaintiff's sinusitis, and the declarations and "memories" of the individual Defendants.   (Docket #188 at 2-7.) Defendants reaffirm their contentions that no genuine dispute of material fact exists, Plaintiff fails to submit admissible evidence in support of his disagreement with the stated facts, and in any event, the facts do not articulate a valid Eighth Amendment claim.

## II.   Facts

Defendants offer the following general recitation of facts:[5]

A dry cell is a cell maintained for the purpose of close observation of an inmate who may have ingested contraband.  *See* Ex. A-1 at ¶ 4 (Declaration of SIS Lt. Marty Bier); *see also*

---

[4]*See* 42 U.S.C. § 1997e(a); 28 C.F.R. §§ 542.10-19 (2007).

[5]The cited Exhibits referred to those attached with Defendants' Motion.

Attachment 1 to Ex. A-1 at 4-8 (BOP Program Statement 5521.05, Searches of Housing Units, Inmates, and Inmate Work Areas, June 30, 1997).  The inmate remains in the dry cell until the inmate has voided (usually by defecation) the suspected contraband.  *See* Ex. A-1 at ¶ 4.  The dry cell at the ADX is located in the Health Services area of the institution.  *See* Doc. 31 at 1.  While an inmate is in the dry cell, a health services provider is responsible for providing any necessary care to the inmate.  *See* Ex. A-6 at ¶ 5 (Declaration of P.A. Anthony Osagie).  The dry cell is furnished with only a cement bed.  *See* Ex. A-2 at 38:18-20 (Deposition excerpts of Plaintiff); *see also* Ex. A-3 at ¶ 6 (Declaration of ADX Captain Russ Krist).  The dry cell does not have a toilet.  *Cf.* Ex. A-3 at ¶ 6.

Pursuant to BOP policy, inmates in a dry cell are required to be clothed in a jumpsuit or other suitable loose-fitting clothing.  *See* Ex. A-3 at ¶ 8.  At the ADX, in order to prevent the inmate from defecating and re-concealing the contraband, inmates are typically placed in the dry cell in boxer shorts and a t-shirt.  *Id.*  Inmates in the dry cell are also provided with a mattress for the cement bed and a blanket.  *Id.* at ¶ 7.  The dry cell has two doors, an inner grill (a door with bars), and an outer solid door.  *See* Ex. A-1 at ¶ 5; Ex. A-3 at ¶ 5; Ex. A-4 at ¶ 4 (Declaration of Lieutenant William Barry); Ex. A-9 at ¶ 4 (Declaration of Correctional Officer Nicholas Ham).  When an inmate suspected of concealing contraband is in the dry cell, in order to permit constant visual supervision of the inmate, only the inner grilled door remains secured.  *See* Ex. A-1 at ¶ 5; Ex. A-3 at ¶ 3; Ex. A-4 at ¶ 4; Ex. A-9 at ¶ 4.  One Correctional Officer supervises the dry cell at all times.  *See* Ex. A-1 at ¶ 6; Ex. A-4 at ¶ 5; Ex. A-9 at ¶ 3.  If the inmate requests to use the restroom to defecate, the Correctional Officer notifies a Lieutenant, who must be present for the event.  *See* Ex. A-1 at ¶ 6; Ex. A-4 at ¶ 5; Ex. A-9 at ¶ 3.

The dry cell does not have a supply air input located in the cell. *See* Ex. A-5 at ¶ 7 (Declaration of HVAC Supervisor Mark Masar). The reason the dry cell does not have a supply air input in the cell is because the dry cell is a "negative pressure" cell for use with inmates with communicable airborne diseases. *See* Ex. A-5 at ¶ 7. The dry cell receives its heat (and air conditioning) from outside the cell. *Id.* The indoor temperature at the ADX is maintained at approximately 69-71°F all year. *Id.* at ¶ 5 . During the winter months, the indoor temperature at the ADX is maintained at approximately 70-71°F. *Id.* ADX staff are aware of and respond to complaints of any abnormal temperatures in the institution below 65°F. *Id.* at ¶ 3.

On December 28, 2006, the Special Investigative Services ('SIS") office at the ADX received a written tip from an inmate that Plaintiff was in possession of a handcuff key. *See* Ex. A-1 at ¶ 9. On December 28, 2008, a shakedown was conducted of Plaintiff's cell. *Id.*; *see also* Ex. A-2 at 22:10-18; 27:10-18. In addition, a contraband x-ray was taken of Plaintiff to determine whether Plaintiff had swallowed any metal contraband. *See* Ex. A-1 at ¶ 9; *see also* Ex. A-2 at 27:10-18. The contraband x-ray revealed an item in Plaintiff's abdomen. *See* Ex. A-1 at ¶ 10; *see also* Ex. A-2 at 29:11-21. Plaintiff had swallowed a sewing needle encased in plastic. *See* Ex. A-1 at ¶ 15; *see also* Ex. A-2 at 26:18-25.

Plaintiff was placed in the dry cell at approximately 3:00 P.M. on December 28, 2006. *See* Ex. A-1 at ¶ 13; *see also* Doc. 3 at 15 (copy of Dry Cell Log Book filed by Plaintiff with Complaint); Attachment 3 to Ex. A-1 at 2 (copy of Dry Cell Log Book filed by Plaintiff with Complaint); Ex. A-2 at 21:7-15. At approximately 6:30 P.M. on December 31, 2006, Plaintiff defecated and the sewing needle was recovered. *See* Ex. A-2 at 30:24-25 to 31:1-4; *see also* Ex. A-1 at ¶ 18. After the sewing needle was recovered, on the evening of December 31, 2006, Plaintiff was removed from the dry cell and moved to the Special Housing Unit. *See* Ex. A-2 at 80:21-24; *see*

*also* Doc. 3 at 24 (copy of Dry Cell Log Book filed by Plaintiff with Complaint); Attachment 3 to Ex. A-1 at 11 (copy of Dry Cell Log Book filed by Plaintiff with Complaint).  Plaintiff was in the dry cell for just over three days (December 28, 2006, through December 31, 2006).

While in the dry cell, Plaintiff was wearing a t-shirt and boxer shorts.  *See* Doc. 31 at 2; *see also* Ex. A-2 at 32:7-9.  While in the dry cell, Plaintiff had a mattress for the cement bed.  *See* Doc. 31 at 2; *see also* Ex. A-2 at 38:23-24.  On December 29, 2006, at approximately 3:30 A.M., Plaintiff received a new blanket in exchange for his existing blanket.  *See* Ex. A-1 at 39:13-25 to 40:1-2; *see also* Doc. 3 at 17 (copy of Dry Cell Log Book filed by Plaintiff with Complaint); Attachment 3 to Ex. A-1 at 4 (copy of Dry Cell Log Book filed by Plaintiff with Complaint).  At all times while in the dry cell, Plaintiff had a blanket.  *See id*.  Plaintiff could not see his breath in the dry cell.  *See* Ex. A-2 at 46:10-11.

The temperature in the Health Services area immediately outside the dry cell was 70-71°F in late December 2006.  *See* Ex. A-5 at ¶ 8.  The Dry Cell Log Book records that Plaintiff first complained of the cold at approximately 4:15 P.M. on December 30, 2006.  *See* Doc. 3 at 21 (copy of Dry Cell Log Book filed by Plaintiff with Complaint); Attachment 3 to Ex. A-1 at 8 (copy of Dry Cell Log Book filed by Plaintiff with Complaint).  While in the dry cell, Plaintiff received all but one meal when he first arrived in the dry cell.  *See* Ex. A-2 at 76:19-23.  While in the dry cell, Plaintiff received water, including hot water, coffee, and tea.  *Id*. at 77:9-15.  Plaintiff did not have any symptoms of a sinus infection while he was in the dry cell.  *See* Ex. A-2 at 78:15-25 to 79:1-7.

On January 12, 2007, twelve days after his release from the dry cell, Physicians Assistant ("P.A.") Shiefelbein responded to complaints by Plaintiff of a "sinus infection."  *See* Ex. A-7 at ¶ 10 (Declaration of Doctor David K. Allred).  P.A. Shiefelbein examined Plaintiff and noted that he: (1) was tender over his frontal sinuses; (2) had warm and dry skin; (3) was not in respiratory

distress; (4) was alert and in no apparent other distress; and (5) could walk about his cell without problems. *Id.*; *see also* Attachment 1 to Ex. A-7 (excerpt from Plaintiff's medical records).  P.A. Shiefelbein diagnosed Plaintiff with "probable sinusitis" and prescribed amoxicillin.  *See* Ex. A-7 at ¶ 12.  Sinusitis is an inflammation of the sinuses that occurs with a viral, bacterial, or fungal infection. *Id.* at ¶ 7.  Typical symptoms include a cough, fatigue or general malaise, fever, headache (including facial pain and tenderness), and nasal congestion and discharge.  *Id.*  Sinusitis is not a life-threatening condition, except in very rare circumstances.  *Id.* at ¶ 8.  Plaintiff received the amoxicillin prescribed by P.A. Shiefelbein on January 13, 2007.  *See* Ex. A-2 at 86:21-25 to 87:1-4. The amoxicillin prescribed by PA Shiefelbein relieved Plaintiff's symptoms.  *See id.* at 87:8-10.  A delay of one day in receiving a prescription medication at the ADX is not uncommon.  *See* Ex. A-7 at ¶ 12; *see also* Ex. A-8 at ¶ 5 (Declaration of Health Technician Brenda Vanaman).  In the case of a patient with Plaintiff's symptoms, a delay of one day in providing antibiotics would not have had an adverse effect in the patient's recovery.  *See* Ex. A-7 at ¶ 12.  Plaintiff's medical records, which contain an inmate's requests for medical care, do not contain any requests by Plaintiff for medical assistance for his sinus infection in early January 2007.  *See id.* at ¶ 13.  Plaintiff has not had any long-term adverse effects from the January 2007 "probable sinusitis."  *See id.* at ¶ 14.

Plaintiff disagrees with a number of the facts designated as undisputed by Defendants, which the Court further addresses in its analysis below.

## III.   Discussion

### A.   *Summary Judgment under Fed. R. Civ. P. 56*

Summary judgment serves the purpose of testing whether a trial is required.  *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003).  The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show

there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party bears the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law. *Id.* at 323; *Maldonado v. City of Altus*, 433 F.3d 1294, 1302 (10th Cir. 2006).

If the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing a genuine factual issue for trial. *Hysten v. Burlington Northern and Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002); Fed. R. Civ. P. 56(e). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1256 (10th Cir. 2005).

### B.    Review of a Pro Se Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted).  The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## IV.    Analysis: Qualified Immunity

Plaintiff does not specifically identify whether he brings these claims against Defendants in their official or individual capacities, but he seeks only monetary damages as relief pursuant to *Bivens*.  (*See* docket #31.)  Thus, the Court concludes that because Plaintiff asserts his lawsuit is a "Bivens Action" and seeks only monetary relief, Plaintiff sues the individual Defendants in their individual capacities only.  (*Id.*)

The identified Defendants assert that they are entitled to qualified immunity.  (Docket #172 at 27.)  Qualified immunity protects government officials sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982).  It is an entitlement to not stand trial or face the other burdens of litigation. *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). The privilege is an immunity from suit rather than a mere defense to liability.  *Id.*  The Supreme Court established that evaluating the defense of qualified immunity is a threshold issue.  *Siegert v. Gilley*, 500 U.S. 226, 231 (1991).  "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established."  *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (citing *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009)).

The Supreme Court recently discarded a review process that required courts to examine these questions sequentially, first considering whether a right had been violated, and then second - if the court concluded a right had been violated - whether that right was clearly established at the time of the alleged violation.  *Pearson,* 129 S. Ct. at 816-22.  *Pearson* retired this process, instead affording courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.*; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).  Here, for each claim alleged, the Court examines first whether the Plaintiff has demonstrated on the facts alleged that a genuine dispute as to whether the Defendants violated his constitutional rights exists.  If the Plaintiff meets this first hurdle, the Court will then proceed to determine whether the constitutional right allegedly violated was clearly established at the time of the asserted conduct.

      **A.**    ***Constitutional Violation***

Plaintiff's claims center around his primary contentions that the conditions of the dry cell during his three-day confinement, including the temperature and available provisions such as a blanket, clothing, food, and drink, were likely to cause and indeed did cause Plaintiff to become ill

with "Sinusitis" in violation of the Eighth Amendment.  Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'"  *Penrod v. Zavaras,* 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)).  Accordingly, prison officials must "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and ... tak[e] reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir. 1998) (citing *Farmer v. Brennan,* 511 U.S. 825, 832-33 (1994)).  To establish an Eighth Amendment conditions-of-confinement claim, Plaintiff must show that "(1) objectively, the deprivation was 'sufficiently serious so as to deprive inmates of the minimal civilized measure of life's necessities ... [or] so as [to] constitute a substantial risk of serious harm,' and (2) subjectively, the defendants 'act [ed] or fail[ed] to act with deliberate indifference to inmate health and safety.'" *Lucero v. Mesa County Sheriff's Dep't*, 297 F. App'x 765, 766 (10th Cir. 2008) (citing *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001)).

### 1.    Eighth Amendment Objective Requirement

As stated, Plaintiff must show that objectively, the alleged deprivation was sufficiently serious in that it failed to provide the minimal civilized measure of life's necessities or constituted a substantial risk of serious harm.  In his Amended Complaint, Plaintiff contends the temperature in the dry cell during his confinement averaged "40°-45°F."  (Docket #31 at 2.)  In their "Statement of Undisputed Material Facts," Defendants attest the dry cell receives its heat from outside the cell because it does not have a "supply air input" located in the call.  (Docket #172 at 4.)  Moreover, Defendants represent that "during the winter months, the indoor temperature at the ADX is maintained at approximately 70-71°F."  (*Id.*)  Defendants refer to the Declaration of Mark Masar, who is one of the two "Heating Ventilating Air Conditioning and Refrigeration" (HVAC)

Supervisors at the ADX facility in Florence, in support of these contentions.  (Docket #172-6.)  According to Mr. Masar, the area outside of the dry cell would thus have been approximately 70-71°F in December 2006, during Plaintiff's confinement.  (*Id.* at 4.)

Plaintiff "hotly (NPI) [sic] disputes and denies" that the temperature of the dry cell was approximately 70-71°F.  (Docket #185 at 3.)  In support of his disagreement, Plaintiff refers to three exhibits included with his response: 1) a drawing of the dry room schematic, which the Court assumes Plaintiff prepared (*id.* at 15); 2) a document titled "Plaintiff's Sworn Declaration In Re "Excited Utterances" Made by Defendant - Non Defendant" (docket #185-2 at 1); and 3) the dry cell "log book" included with Plaintiff's original complaint (docket #3 at 15).  The drawing represents that cool air from the "X-ray room" is drawn into the dry cell by an exhaust fan.  The "Excited Utterances" describe a conversation, as recalled by Plaintiff, between Correctional Officer Rodriguez and Defendant Osagie,  in which Officer Rodriguez expressed that it was cold and to give the Plaintiff a blanket, which Defendant Osagie then did.  The "Excited Utterances" also indicate Defendant Bier wanted to know who gave the blanket to Plaintiff.  (Docket #185-2 at 1-2.)  The dry cell log book indicates that on December 28 at about 3:45 p.m., Plaintiff was "laying down & covered up," implying Plaintiff had a blanket.  The entry on December 29 at 3:40 a.m. states Plaintiff traded blankets.  On December 30, at about 3:30 p.m., the log book describes how Plaintiff was keeping the blanket over his shoulders.  The log book also demonstrates that Plaintiff complained about the cold at approximately 4:15 p.m. on December 30, and at 2:00 a.m., 5:50 a.m., 6:05 a.m., and 11:30 a.m. on December 31.  (Docket #3 at 21-24.)

"At the summary judgment stage, the parties need not submit evidence in a form admissible at trial; however, the content or the substance of the evidence must be admissible."  *Bryant v. Farmers Ins. Exchange*, 432 F.3d 1114, (10th Cir. 2005).  Defendants do not contest the authenticity

of the drawing, so the Court, at this stage, accepts it for consideration. Defendants do argue that the "Excited Utterances" constitute inadmissible hearsay, however, the Court suggests the content of the "utterances" could be construed as present sense impressions governed by Fed. R. Evid. 803(1). At the very least, in light of the specificity and length to which Plaintiff supports his contentions, the Court believes, after reviewing the case law described below, that a genuine dispute as to the material fact of the dry cell's temperature exists, precluding summary judgment on this point.

In *Ajaj v. United States*, the Tenth Circuit determined the conditions of confinement contested by the plaintiff did not violate the Eighth Amendment. The *Ajaj* plaintiff argued that ADX officials denied him access to outdoor recreation. Although some courts have held "a denial of fresh air and exercise to be cruel and unusual punishment under certain circumstances," the Tenth Circuit found that because the *Ajaj* plaintiff had turned down opportunities for exercise and had not alleged a sustained period of time without outdoor recreation, he failed to establish an Eighth Amendment claim. 293 F. App'x 575, 583-84 (10th Cir. 2008) (quoting *Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir. 2006)). The *Ajaj* Court emphasized that, in evaluating a claim that conditions of confinement violate the Eighth Amendment, the conditions must be considered as a whole "because several deprivations 'in combination' may constitute a constitutional violation . . . 'for example, a low cell temperature at night combined with a failure to issue blankets.'" 293 F. App'x at 583 (quoting *Mitchell v. Maynard*, 80 F.3d 1433, 1442 (10th Cir. 1996)). *See, e.g., Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980) (inmate must be provided with "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities (i.e., hot and cold water, light, heat, plumbing")). *Compare Gillis v. Litscher*, 468 F.3d 488, 495 (7th Cir. 2006) (ruling qualified immunity inappropriate on Eighth Amendment claim where conditions of confinement included "denial of shelter, heat, and hygiene items"), *with Ruark v. Solano*, 928 F.2d 947, 949 (10th Cir.

1991) (overruled on other grounds) (concluding an inmate's allegations that his cell was small and noisy, that his movement outside his cell was severely restricted, and that he enjoyed very limited visitation did not implicate the Eighth Amendment). *See also Strope v. Sebelius*, 189 F. App'x 763, 766 (10th Cir. 2006) (holding that allegations of cells being too hot and not properly ventilated, although "no doubt uncomfortable," were insufficient to state an Eighth Amendment claim).

The case at hand is more similar to *DeSpain v. Uphoff*, in which the Tenth Circuit reviewed claims arising from a two-day and separate five-day placement in an isolation cell. 229 F.3d 1162, 2000 WL 1228003 (10th Cir. 2000) (unpublished). In *DeSpain*, the plaintiff alleged that he was kept in an "unheated 'strip cell'" when the outdoor temperature ranged "between thirty to forty degrees." 2000 WL 1228003 at *1. The plaintiff stated he was housed without hygiene items, mattress, or bedding except for a "suicide blanket" during the five-day stay and was allowed to wear only boxer shorts. The Tenth Circuit reversed a *sua sponte* dismissal for failure to state a claim, because the "plaintiff's allegations that on two separate occasions he was placed in isolation without clothes, a mattress, or bedding, and without any means to keep warm support his conditions of confinement claim sufficiently." 2000 WL 1228003 at *4. The *DeSpain* Court cited *Wilson v. Seiter* to establish warmth as "'a single, identifiable human need,' the deprivation of which may constitute an Eighth Amendment violation." *Id*. (citing 501 U.S. 294, 304 (1991)). The *DeSpain* Court also looked to its prior jurisprudence in *Mitchell v. Maynard*, when it determined that the *Mitchell* plaintiff, when

> stripped of his clothing, placed in a concrete cell, with no heat at a time when nighttime temperatures hovered in the mid-fifties, provided no mattress, blankets or bedding of any kind, deprived of his prescription eyeglasses, not allowed to leave his cell for exercise, not provided with writing utensils, not provided with adequate ventilation, not provided with hot water, and only sometimes allowed minimal amounts of toilet paper

for "a period of days, weeks, and months" alleged numerous and inhumane deprivations. 80 F.3d

15

1433, 1442-43 (10th Cir. 1996).

Defendants cite to *Hawkes v. Wyoming Dep't of Corr. Honor Conservation Camp* in support of their position.  124 F.3d 216, 1997 WL 545594 (10th Cir. 1997) (unpublished).  The facts of *Hawkes* are distinguishable from the matter at hand.  The *Hawkes* plaintiff filed suit complaining about detention in an unheated cell for five days in January.  The *Hawkes* Court stated, "cold temperatures for a short period of time do not alone necessarily result in a constitutional violation," however, the *Hawkes* plaintiff made only general comments regarding a cold temperature and did not allege that he was not given adequate bedding to deal with the cold.  1997 WL 545594 at *2. Here, Plaintiff makes specific and repeated assertions regarding the temperature of the dry cell, and Plaintiff contends that the minimal clothing, *i.e.* boxer shorts and t-shirt, and minimal blanket failed to protect him from the cold temperature.

Even considering the totality of the circumstances as argued by Defendants, that Plaintiff had a blanket (of varying quality), food, drink, and medical attention, the crux of this matter is whether the temperature of the dry cell was cold enough during Plaintiff's three-day confinement to constitute a violation of the Eighth Amendment.  As demonstrated by the described Tenth Circuit precedent, a deprivation of warmth may violate the Eighth Amendment's prohibition of cruel and unusual punishment.  Defendants and Plaintiff submitted extensive evidence to the Court, both admissible and potentially inadmissible, but such evidentiary conflict demonstrates to the Court that a genuine issue of material fact exists as to the temperature of the dry cell, which could satisfy the objective prong of an Eighth Amendment conditions-of-confinement analysis.

2.      Eighth Amendment Subjective Requirement

Defendants contend Plaintiff fails to demonstrate that subjectively, Defendants acted or failed to act with deliberate indifference.  The subjective component is met if Plaintiff demonstrates

each Defendant knew of and disregarded an excessive risk to Plaintiff's health and safety. *Farmer*, 511 at 837. Each Defendant "must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he [or she] must also [have] draw[n] the inference." *Id*. Importantly, "an official's failure to alleviate a significant risk that he [or she] should have perceived but did not, while no cause for commendation, cannot under [the Supreme Court's] cases be condemned as the infliction of punishment." *Id*. at 838. Evaluation of the subjective prong mandates inquiry into a prison official's state of mind to determine if such official acted with the requisite criminal recklessness. *Id.*

Before evaluation of the subjective component, Plaintiff must establish personal participation on the part of each named Defendant for a proper *Bivens* claim. A *Bivens* action requires an allegation of personal participation, demonstrating how each defendant caused the deprivation of a federal right. *E.g., Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise." *See Butler v. City of Norman*, 992 F. 2d 1053, 1055 (10th Cir. 1993). "Direct, personal participation is required to establish *Bivens* liability." *Skinner v. U.S. Bureau of Prisons*, 283 F. App'x 598, 599 (10th Cir. 2008) (quoting *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003)). For each Defendant, the Court first analyzes the personal participation element required in a *Bivens* action; then, the Court evaluates the subjective prong of the Eighth Amendment test. The Court addresses Plaintiff's claims against Correctional Supervisor Bier, Physician Assistant Osagie, EMT Vanaman (Dagleish), Correctional Supervisor Barry, and Correctional Officer Ham in turn.

### a.      Correctional Supervisor Bier

Plaintiff alleges Defendant Bier ordered Plaintiff's confinement to the dry cell.  (Docket #31 at 2.)  Plaintiff contends he complained about "the low temperature of the dry cell, inadequate clothing/bedding and the liklihood [sic] of illness resulting from same" to Defendant Bier shortly after being confined in the dry cell.  (*Id*. at 2-3.)  Plaintiff argues that due to Defendant Bier's supervisory position over the dry cell "program," Defendant Bier "knew or should have known" the conditions "posed a serious risk to the health" of Plaintiff, thus, Defendant Bier acted with deliberate indifference.  (*Id*. at 3.)

Defendants attached a Declaration by Defendant Bier in support of their Motion for Summary Judgment.  (Docket #172-2.)  Defendant Bier stated he was present when Plaintiff was confined in the dry cell on December 28, 2006, and responded to a request by Plaintiff to defecate on December 29, 2006.  (Docket #172 at 9.)  Defendant Bier recalled he did not see Plaintiff in the dry cell at any other time after the morning of December 29, 2006.  Defendant Bier attested that he did not recall any request to him by Plaintiff for additional blankets or clothes, or any indication by Plaintiff that he was cold or feeling sick.  (*Id*.)  Defendant Bier represents that he does not have control over the temperature in the dry cell.  (*Id*. at 8.)

The Court finds that Defendant Bier's personal participation in Plaintiff's confinement is undisputed.  However, whether Defendant Bier knew of and disregarded an excessive risk to Plaintiff by the deprivation of warmth poses a credibility issue.  Defendant Bier represents that he does not recall the facts of Plaintiff's confinement, and he was not aware that Plaintiff was cold.  (Docket #172 at 8-10, 24.)  Plaintiff disputes Defendant Bier's statements and attests that he requested bedding and clothing from Defendant Bier "while complaining about the low temperatures and likelihood of illness on both 12.28.2006 and 12.29.2006."  (Docket #185 at 5.)  Thus, a genuine

18

issue of material fact regarding the mental state of Defendant Bier exists and summary judgment dismissing Defendant Bier from the action would not be appropriate.

### b.      Physician Assistant Osagie

Plaintiff alleges Defendant Osagie knew that the conditions of Plaintiff's dry cell confinement posed a serious risk to Plaintiff's health and refused to remedy the situation by providing adequate clothing and bedding.  (Docket #31 at 3.)   Additionally, Plaintiff contends Defendant Osagie failed to respond to Plaintiff's needs for specific medication.  (*Id*.)  Defendant Osagie asserts that at Plaintiff's request, he provided Plaintiff with a higher dose of aspirin at approximately 3 a.m. on December 29, 2006.[6]  (Docket #172 at 14.)  Defendant Osagie attested that he did not recall any request to him by Plaintiff for additional blankets or clothes, or any indication by Plaintiff that he was cold or feeling sick.  (*Id*.)  Defendant Osagie also represents that he does not have control over the temperature in the dry cell.  (*Id*. at 13.)

The Court finds that Defendant Osagie's personal participation in Plaintiff's confinement is undisputed.  However, like Defendant Bier, whether Defendant Osagie knew of and disregarded an excessive risk to Plaintiff by the deprivation of warmth poses a credibility issue.  Defendant Osagie represents that he does not recall the facts of Plaintiff's confinement, and he was not aware that Plaintiff was cold.  (*Id*. at 14.)  Plaintiff contends that he complained directly to Defendant Osagie about the low temperatures and inadequate clothing and bedding.  (Docket #185 at 8; docket #185-2 at 1-2; docket #191 at 1.)  Thus, a genuine issue of material fact regarding the mental state of Defendant Osagie exists and summary judgment dismissing Defendant Osagie from the action

---

[6]This assertion is corroborated by the record in the dry cell log book. (Docket #3 at 17.) Thus, the portion of Plaintiff's claim against Defendant Osagie that he failed to provide medication during the period of confinement is indisputably refuted.

would not be appropriate.

### c.    EMT Vanaman (Dagleish)

Plaintiff offers only a brief and conclusory allegation that because he saw Defendant Vanaman  wearing heavy clothing, she thus knew that Plaintiff's lack of adequate clothing in the context of the dry cell's temperature posed a risk to Plaintiff.  However, Plaintiff then admits that he complained to all of the named Defendants directly "with the exception of Defendant[ ] B. Vanaman."  (Docket #191 at 1.)

Defendant Vanaman represents that, at the instruction of the correctional officer on duty on December 31, 2006, she turned off the exhaust fan in the dry cell.  Defendant Vanaman states she never spoke to Plaintiff while he was in the dry cell.  (Docket #172 at 15.)  The Court finds that these facts indicate no direct participation by Defendant Vanaman that could indicate any criminal recklessness on her part regarding the alleged deprivation of warmth in this matter.  Therefore, the Court recommends summary judgment be granted as to Defendant Vanaman and the claims against her be dismissed with prejudice.

### d.    Correctional Supervisor Barry

Plaintiff alleges he complained "in detail" to Defendant Barry regarding the low temperature and inadequate bedding and clothing in the dry cell, and Defendant Barry did nothing to alleviate the cold.  (Docket #31 at 5.)  Defendant Barry, like Defendant Bier, attested that he did not recall any request to him by Plaintiff for additional blankets or clothes, or any indication by Plaintiff that he was cold or feeling sick.  (Docket #172 at 11.)  Defendant Barry also represents that he does not have control over the temperature in the dry cell.  (*Id*. at 10.)

The Court finds that Defendant Barry's personal participation in Plaintiff's confinement is undisputed.  However, like Defendants Bier and Osagie, whether Defendant Barry knew of and

disregarded an excessive risk to Plaintiff by the deprivation of warmth poses a credibility issue. Defendant Barry represents that he does not recall the facts of Plaintiff's confinement, and he was not aware that Plaintiff was cold.  (*Id*. at 11.)  Plaintiff contends that Defendant Barry's inability to recall the facts does not deny Plaintiff's allegations against Defendant Barry.  (Docket #185 at 6.) Furthermore, Plaintiff attests that he complained directly to Defendant Barry about the low temperatures and inadequate clothing and bedding.  (Docket #191 at 1.)  Thus, a genuine issue of material fact regarding the mental state of Defendant Barry exists and summary judgment dismissing Defendant Barry from the action would not be appropriate.

### e.    *Correctional Officer Ham*

Plaintiff alleges that he complained to Defendant Ham regarding the low temperature and inadequate bedding and clothing in the dry cell, and Defendant Ham also did nothing to alleviate the cold.  (Docket #31 at 5-6.)  Plaintiff asserts that Defendant Ham stated, "[t]hey told me not to give you anything" in response to Plaintiff's complaints.  (*Id*. at 6.)  Defendant Ham, like Defendants Bier and Barry, attested that he did not recall any request to him by Plaintiff for additional blankets or clothes, or any indication by Plaintiff that he was cold or feeling sick. (Docket #172 at 12-13.)  Defendant Barry also represents that he does not have control over the temperature in the dry cell.  (*Id*. at 12.)

The Court finds that Defendant Ham's personal participation in Plaintiff's confinement is undisputed.  However, whether Defendant Ham knew of and disregarded an excessive risk to Plaintiff by the deprivation of warmth poses a credibility issue.  Defendant Ham represents that he does not recall the facts of Plaintiff's confinement, and he was not aware that Plaintiff was cold.  (*Id*. at 12-11.)  Plaintiff contends that Defendant Ham's inability to recall the facts does not deny Plaintiff's allegations against Defendant Ham.  (Docket #185 at 7.)  Furthermore, Plaintiff attests

that he complained directly to Defendant Barry about the low temperatures and inadequate clothing and bedding. (*Id.*; Docket #191 at 1.) Plaintiff reiterates that, in response to Plaintiff's complaints, Defendant Ham said "repeatedly, 'they told me not to give you anything.'" (Docket #185 at 7.) Thus, a genuine issue of material fact regarding the mental state of Defendant Ham exists and summary judgment dismissing Defendant Ham from the action would not be appropriate.

### B.    Clearly Established Right

A right is clearly established only if there is "'a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains.'" *Cortez v. McCauley*, 478 F.3d 1108, 1114-15 (10th Cir. 2007) (en banc) (quoting *Medina v. City of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992)). "This prior caselaw need not address a situation factually identical to that of a defendant officer, but it must 'provide fair warning that [the] officer's conduct would violate constitutional rights.'" *Bowling v. Rector*, __ F.3d __, 2009 WL 3416342, at *5 (10th Cir. 2009) (quoting *Marshall v. Columbia Lea Reg'l Hosp.*, 474 F.3d 733, 740 (10th Cir. 2007)). As previously described, both the Supreme Court and the Tenth Circuit recognize that the Eighth Amendment enshrines an entitlement to minimal measures of life's basic necessities, including warmth. *E.g.*, *Wilson*, 501 U.S. at 304; *DeSpain*, 2000 WL 1228003 at *4; *Mitchell*, 80 F.3d at 1442. Thus, the right of Plaintiff to be free from subjection to cold temperatures while confined is clearly established and was clearly established at the time of the facts before the Court.

The Court finds genuine issues of material fact exist as to whether Defendants Bier, Osagie, Barry and Ham knew of and disregarded an excessive risk to Plaintiff by the deprivation of warmth, implicating a potential Eighth Amendment violation. The Court further finds that such a constitutional violation would indeed impact the clearly established right to be free from cruel and

unusual punishment, barring Defendants from successfully asserting qualified immunity at the summary judgment stage of this proceeding.

**V.     Conclusion**

The Court emphasizes that it makes no conclusions as to the veracity of the allegations in this matter.  However, the Court recognizes that "[w]hen conflicting testimony is presented regarding events and motivations, 'it is the jury's prerogative to weigh the credibility of the witnesses and determine who should be believed.'"  *Mitchell*, 80 F.3d at 1443 (citations omitted). "Once the jury decide[s] whom to believe, it could then decide whether these alleged deprivations constituted cruel and unusual punishment." *Id*.

The Court agrees that recovering contraband retained by inmates in the federal prison system through the use of a dry cell represents a valid penological interest, but use of the dry cell combined with cold temperatures and inadequate clothing or bedding can constitute impermissibly punitive means with no legitimate purpose.  If Plaintiff can prove the temperature of the dry cell was indeed cold enough over the three day period to implicate an Eighth Amendment violation, which, as demonstrated by the series of conditions-of-confinement cases evaluated by the Tenth Circuit, was clearly established at the time of the incident, the Defendants would not be entitled to qualified immunity.  At the ultimate conclusion of this case, Defendants may be entitled to qualified immunity, but in the context of this motion for summary judgment, the Court finds genuine disputes of material fact related to the objective and subjective components of Plaintiff's Eighth Amendment claim exist, and summary judgment is inappropriate as to Defendants Bier, Osagie, Barry, and Ham.

Accordingly, for the reasons stated above, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment [filed July 31, 2009; docket #172] be **GRANTED** as to Defendant

Vanaman (EMT Dalgleish) and **DENIED** as to Defendants Bier, Osagie, Barry, and Ham.[7]

It is further **RECOMMENDED** that Plaintiff's case be placed on the list of *pro se* cases for which the Court is seeking volunteer counsel maintained by the CJA/Pro Se Division of the Clerk's Office.

Dated at Denver, Colorado, this 27th day of October, 2009.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

[7]*See supra* note 1.