**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 07-cv-02593-CMA-MEH

PETER P. MAUCHLIN,

    Plaintiff,

v.

BIER, SIS Correctional Supervisor,
A. OSAGIE, Physician Assistant,
DALGLEISH, EMT,
BARRY, Correctional Supervisor,
HAM, Correctional Supervisor,
JOHN DOE 1, Correctional Officer, and
JOHN DOE 2, Medical Officer,

    Defendants.

---

**ORDER REGARDING OCTOBER 27, 2009 RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

---

    This is a civil rights case in which a prisoner alleges his Eighth Amendment rights were violated because the conditions of the dry cell in which he was confined for three days, including the temperature and available provisions such as blanket, clothing, food, and drink, caused Plaintiff to become ill with "sinusitis." Defendants are prison employees and have moved for summary judgment on qualified immunity grounds. The matter is before the Court on the October 27, 2009 Recommendation by the Magistrate Judge that Defendants' Motion for Summary Judgment be granted as to Defendant Vanaman (EMT Dalgeish) and denied as to Defendants Bier, Osagie, Barry, and Ham. (Doc. # 200.)

The parties have objected to portions of the Recommendation. Thus, as to those portions the Court has conducted the requisite de novo review of the issues, the Recommendation, and the parties' objections. For the following reasons, the Court REJECTS the Magistrate Judge's Recommendation and GRANTS, in all respects, Defendants' Motion for Summary Judgment.

## I. BACKGROUND

The factual and procedural background is set out at length in the Magistrate Judge's Recommendation, which the Court incorporates herein. The Court will elaborate on the facts, as needed, in the analysis section. Following is a recap of the most relevant facts which are undisputed, unless otherwise noted.

Plaintiff is a federal inmate incarcerated at the Administrative Maximum ("ADX") facility in Florence, Colorado. On December 28, 2006, the Special Investigative Services ("SIS") office at the ADX received a tip from another inmate that Plaintiff was in possession of a handcuff key. After a contraband x-ray revealed something in his abdomen, Plaintiff admitted that he had swallowed a sewing needle encased in plastic.

Plaintiff was then placed in a "dry cell," a room designed to observe inmates who have ingested contraband. According to BOP policy, the inmate typically remains in the dry cell until he voids (usually by defecation) the suspected contraband. At the ADX, in order to prevent the inmate from defecating and re-concealing the contraband, inmates are typically placed in the dry cell in boxer shorts and a T-shirt.

Plaintiff was in the dry cell for just over three days. He was placed there at approximately 3:00 P.M. on December 28, 2006, wearing a T-shirt and boxer shorts. He also had a mattress for the cement bed and a blanket, of which Plaintiff disputes the quality. Plaintiff contends the temperature inside the dry cell was 40°-45°F. He admits, however, that he could not see his breath in the dry cell. He also contends that he complained directly to all Defendants about the temperature. Defendants either dispute this or claim not to remember. The log book reflects that Plaintiff complained about the cold at approximately 4:15 p.m. on December 30 and at 2:00 a.m., 5:50 a.m., 6:05 a.m., and 11:30 a.m. on December 31.

At approximately 6:30 P.M. on December 31, 2006, Plaintiff defecated. The needle was recovered and Plaintiff was removed from the dry cell. Plaintiff later complained of a "sinus infection," which he claims was caused by the cold temperature in the dry cell. He was treated for "probable sinusitis" and prescribed amoxicillin. The amoxicillin relieved Plaintiff's symptoms and Plaintiff has not had any long-term adverse effects from the January 2007 episode of "probable sinusitis."

Plaintiff initiated this *Bivens* action on December 13, 2007.[1] On March 31, 2008, he filed an Amended Complaint, which is the operative pleading. He alleges that: (1) Defendant Bier, SIS Correctional Supervisor, demonstrated deliberate indifference to the conditions of the dry cell causing Plaintiff to become ill; (2) Defendant Osagie,

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

Physician Assistant, failed to alleviate Plaintiff's illness by not providing specific medication or treatment and failed to take any actions to address the situation in which Plaintiff was placed; (3) Defendant Dalgleish, EMT, demonstrated deliberate indifference to the increased risk to Plaintiff's health posed by the conditions of the dry cell; (4) Defendant Barry, Correctional Supervisor, and Defendants Ham and John Doe 1, Correctional Officers watching the dry cell, demonstrated deliberate indifference to Plaintiff's complaints requesting adequate warmth and clothing by not providing such items; and (5) Defendant John Doe 2, Medical Officer, showed deliberate indifference to the alleged risk posed to Plaintiff's health by the low temperature of the dry cell. Plaintiff requests certain monetary amounts from each Defendant, for alleged compensatory and punitive damages. (*See* Doc. # 31 at 2-6.)

## II. DISCUSSION

### A. STANDARD OF REVIEW

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district court judge "determine *de novo* any part of the magistrate judge's [recommendation] that has been properly objected to." Fed.R.Civ.P. 72(b)(3). But in the absence of timely objection, the district court may review a magistrate . . . [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir.1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985) (stating that "[i]t does not appear that Congress intended

to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings").

Summary judgment is warranted under Federal Rule of Civil Procedure 56(c) when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

Furthermore, the Court must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). For example, the Court may treat a *pro se* litigant's complaint as an affidavit if it alleges facts based on personal knowledge and has been sworn under penalty of perjury. *Hall*, 935 F.2d at 1111 (citing *Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1139 n. 1 (10th Cir. 1985) (citation omitted)). However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations

to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *See Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994). Accordingly, in this context, Plaintiff must make the necessary showing to overcome Defendants' assertion of qualified immunity.

## B. ANALYSIS – QUALIFIED IMMUNITY

"When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (citing *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009)). If Plaintiff satisfies both prongs, the burden shifts to Defendants to show there is no genuine issue of material fact relevant to the immunity analysis. If Defendants fail in this regard, a motion for summary judgment based on qualified immunity must be denied. *Salmon v. Schwarz*, 948 F.2d 1131, 1136 (10th Cir. 1991). If, however, "the plaintiff fails to carry either part of his two-part burden, the defendant is entitled to qualified immunity." *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995).

The Court begins by asking whether there exists a genuine issue of material fact as to whether there was a constitutional violation.

**1. Whether Defendants' Conduct Violated Plaintiff's Rights Under The Eighth Amendment.**

Plaintiff asserts that his Eighth Amendment rights were violated because the conditions of the dry cell in which he was confined for three days, including the temperature and available provisions such as a blanket, clothing, food, and drink, caused Plaintiff to become ill with "sinusitis." To establish an Eighth Amendment conditions-of-confinement claim, Plaintiff must show that "(1) objectively, the deprivation was 'sufficiently serious so as to deprive inmates of the minimal civilized measure of life's necessities . . . [or] so as [to] constitute a substantial risk of serious harm,' and (2) subjectively, the defendants 'act[ed] or fail[ed] to act with deliberate indifference to inmate health and safety.'" *Lucero v. Mesa County Sheriff's Dep't*, 297 Fed.Appx. 764, 766 (10th Cir. 2008) (citing *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001)).

> ### *a)* *Objective Requirement*
>
>> *i)  Whether the deprivation of warmth inside the dry cell was sufficiently serious.*

To trigger the Eighth Amendment, the complained-of conditions must be "sufficiently serious so as to deprive inmates of civilized measures of life's necessities . . . [or] so as [to] constitute a substantial risk of serious harm." The conditions, moreover, should be considered as a whole if they have a "mutually enforcing effect that produces the deprivation of a single, identifiable human need such as . . . warmth . . . for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991).

In this case, when viewed as a whole, the conditions related to the deprivation (or non-deprivation) of warmth do not rise to the level of a constitutional violation.[2] The Magistrate Judge denied summary judgment on the basis that there was a disputed issue of material fact regarding the temperature inside the dry cell, *i.e.*, if the temperature was 40°-45°F, as Plaintiff claims (and Defendants deny), that temperature could satisfy the objective prong of Plaintiff's conditions-of-confinement claim. (Doc. # 200 at 16-17.) The Court disagrees. The Magistrate Judge credited without question the Plaintiff's "specific and repeated assertions regarding the temperature of the dry cell," and Plaintiff's contentions "that the minimal clothing, *i.e.*, boxer shorts and T-shirt, and minimal blanket failed to protect him from the cold temperature." (*Id.* at 16.) But this is an objective test, not a subjective test. If the conditions, considered in combination, are not sufficiently serious to "deprive" Plaintiff of warmth, Plaintiff's claim will fail. Thus, despite Plaintiff's assertions that the temperature was 40 to 45 degrees and that he was unprotected from that temperature, the undisputed facts – the presence of clothing, a blanket, and the fact he could not see his breath – suggest otherwise; they suggest conditions objectively insufficient to support an Eighth Amendment claim.

As an example, consider *DeSpain v. Uphoff*, a case in which the Tenth Circuit found that the plaintiff had stated a conditions-of-confinement claim. Mr. DeSpain

---

[2] The Court approaches the *Wilson* proposition from reverse: just as certain conditions should be considered in combination if they have the mutually enforcing effect of depriving one of warmth – the temperature and whether the plaintiff had a blanket, clothing, etc. – that same combination of conditions should be considered to determine whether there was no deprivation of warmth.

alleged that on two separate occasions – totaling eight days – he was placed in a cell **without** clothes, **without** a mattress or bedding, **and without** any means to keep warm. *DeSpain v. Uphoff*, 229 F.3d 1162, 2000 WL 1228003 (10th Cir. August 30, 2000) (unpublished) (emphasis added). *DeSpain* formed the basis for the Magistrate Judge's conclusion that the alleged temperature inside the dry cell satisfied the objective prong of Plaintiff's claim. Although *DeSpain* may be similar to this case in that in both cases the cell was alleged to be cold, the similarities end there. The conditions Mr. DeSpain complained of were substantially worse than those complained of by Plaintiff. Unlike Plaintiff, Mr. DeSpain was given no mattress, no blanket, and no shirt.[3] Furthermore, Plaintiff was given regular meals and water, including hot water, coffee, and tea. Thus, even if the Court accepts Plaintiff's version of the facts, *i.e.*, that the temperature in the dry cell was 40-45 degrees, these additional undisputed conditions of confinement, in combination, do not support a finding that Plaintiff's right to human conditions of confinement were violated. Accordingly, a dispute as to the temperature does not preclude summary judgment.

The totality of the conditions of confinement suffered by Plaintiff simply do not approach the conditions of confinement that the Supreme Court and Tenth Circuit have found to violate the Eighth Amendment.

---

[3] *Also see Hawkes v. Wyoming Dep't of Corr. Honor Conservation Camp*, 124 F.3d 216, 1997 WL 545594 (10th Cir. September 4, 1997) (unpublished) (where plaintiff failed to state a conditions-of-confinement claim after alleging he was placed in a cold, unheated detention cell for five days in January).

       *ii)*  *Whether the deprivation of medical treatment for Plaintiff's sinusitis was sufficiently serious.*

In addition to his claims of lack of warmth, Plaintiff alleges that Defendant Osagie failed to alleviate Plaintiff's sinusitis by not providing specific medication or treatment. (Doc. # 31 at 3.) "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (citation and quotation marks omitted). "[T]he purpose for this requirement is to limit claims to significant, as opposed to trivial, suffering. Consequently, we look to the alleged injury claimed by the prisoner, and ask whether that harm is sufficiently serious." *Kikumura v. Osagie*, 461 F.3d 1269, 1292 (10th Cir. 2006) (overruled on other grounds) (citing *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005)).

It is true that Plaintiff was prescribed medication, amoxicillin, for his sinusitis. But that fact, by itself, does not satisfy Plaintiff's burden, for several reasons. To begin with, it was a physician's assistant, not a doctor, who prescribed Plaintiff's medication. *See Sealock*, 218 F.3d at 1209. Second, there is no indication that Plaintiff's sinusitis *mandated* treatment, as required for it to qualify as "sufficiently serious". *Id.* In fact, according to the only doctor on record, Dr. David K. Allred, "sinusitis is most often treated by allowing the infection to resolve on its own." (Doc. # 172-8, ¶ 8.) That suggests that sinusitis does not mandate treatment. Accordingly, one day's delay in receiving treatment is not unreasonable under these facts. Finally, Plaintiff concedes

that he was in fact treated for his "sinusitis" and that the treatment relieved his symptoms. (Doc. # 172-3 at 87:8-10.) And even if there was a delay in receiving that treatment, any delay is irrelevant unless Plaintiff can also show that the delay "resulted in substantial harm." *Sealock*, 218 F.3d at 1210; *see also Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) ("Delays that . . . violate the Eighth Amendment have frequently involved life-threatening situations and instances in which it is apparent that delay would exacerbate the prisoner's medical problems.") (citation omitted).

Plaintiff's sinusitis falls short of the mark. To illustrate the degree of seriousness needed to trigger constitutional protection, consider *Mata v. Saiz*, 427 F.3d 745, 754-55 (10th Cir. 2005). The *Mata* plaintiff presented evidence that she suffered severe chest pain for several days, and ultimately, she had a heart attack that resulted in permanent and irreversible heart damage. *Id.* Similarly, in *Rider v. Werholtz*, the court found the objective component met where the plaintiff alleged he was brutally attacked while sleeping in the medical pod, causing him to bleed from head trauma. *Rider v. Werholtz*, 548 F. Supp. 2d 1188, 1195 (D. Kan. 2008). In contrast, sinusitis, *i.e.*, a sinus infection, is a common inflammation of the sinuses that occurs with viral, bacterial, or fungal infections. (Doc. # 172-8, ¶ 7.) Moreover, Plaintiff acknowledged that he has "a history of sinus infections." (*Id.*, ¶ 10.) On these facts, the Court concludes that (a) Plaintiff's episode of sinusitis is not sufficiently serious to trigger constitutional scrutiny and (b) even it were, any delay in treatment did not cause Plaintiff substantial harm.

At most, then, Plaintiff's allegation that he suffered from an "illness" to which Defendant Osagie "failed to respond . . ." sounds in negligence, a claim not recognized under the Eighth Amendment. *See Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006) (overruled on other grounds) (citations omitted). Accordingly, Plaintiff's claim against Defendant Osagie regarding mistreatment of Plaintiff's "sinus infection" will be dismissed.

### b) *Subjective Requirement*

Given its conclusions under the objective prong of Plaintiff's claims, the Court need not address the subjective prong. Nevertheless, the Court will briefly discuss the subjective prong to illustrate the relationship between the two prongs.

To satisfy the subjective prong of his Eighth Amendment claims, Plaintiff must present evidence demonstrating that each of the five Defendants acted with deliberate indifference to Plaintiff's health and safety:

> To prevail on the subjective component, the prisoner must show that the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it. A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Unlike the objective component, the symptoms displayed by the prisoner are relevant to the subjective component of deliberate indifference. The question is: were the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?

*Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009) (citations, brackets, and quotation marks omitted).

### i) *Defendant Dalgleish*

The Magistrate Judge recommended granting summary judgment in favor of Defendant Dalgeish. Neither Defendants nor Plaintiff objected to this recommendation. Thus, a "de novo" review was not triggered. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991). Nonetheless, the Court reviewed the matter for clear error. Finding none, the Court agrees with the Magistrate Judge and will enter summary judgment in favor of Defendant Dalgleish.

### ii) *Defendants Bier, Osagie, Barry, Ham*

As to Defendants Bier, Osagie, Barry, and Ham, the Magistrate Judge found that whether they knew of and disregarded an excessive risk to Plaintiff by depriving him of warmth posed credibility issues. None of these defendants recalled the circumstances of Plaintiff's confinement and none were aware he was cold. Their stories contrasted with Plaintiff's account that he complained to each of them about the cold temperatures in the cell. Accordingly, the Magistrate Judge found that genuine issues existed as to these defendants' mental states. (Doc. # 200 at 18-21.)

However, the question whether they knew of and disregarded an excessive risk necessarily implies that their was an **excessive** risk. The Eighth Amendment does not outlaw cruel and unusual "conditions;" it outlaws cruel and unusual "punishments."

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  It thus requires a showing not only of sufficiently serious conditions, but also of culpable intent.

Because the Court found that the complained-of conditions – the temperature inside the cell and "resulting" sinusitis – were not sufficiently serious, *i.e.*, that the risk to Plaintiff was not excessive, the Court also finds that the Defendants lacked the requisite mental state, *i.e.*, the knowing disregard of that excessive risk.  Accordingly, the Court resolves this prong in favor of Defendants and against Plaintiff.

Because Plaintiff has failed to satisfy his burden at the "constitutional violation" stage of the qualified immunity inquiry, the Court could conclude its analysis here.  *See Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009) ("the plaintiff . . . must 'meet a strict two-part test'").  The Court continues, however, to show that, even if Plaintiff had demonstrated that Defendants violated his constitutional rights, he still has failed to show that the at-issue right was "clearly established."

### 2. Whether The Constitutional Right Was Clearly Established At The Time Of Defendants' Conduct.[4]

The Tenth Circuit has recently described a court's task in determining whether a particular constitutional violation was clearly established at the time of the violation:

> Our inquiry into whether a constitutional right was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition.  This case-specific inquiry asks

---

[4] A "right" can be defined as "a claim recognized and delimited by law for the purpose of securing it." *Webster's Third New International Dictionary of the English Language, Unabridged* 1955 (1993).  Thus, the Court will at times refer to clearly established "law" for the purpose of determining whether a given "right" has been clearly established, *i.e.*, recognized, as a "right" by the law.

> whether it would be clear to a reasonable officer that his conduct was unlawful in the situation. Summary judgment based on qualified immunity is appropriate if the law did not put the officer on notice that his conduct would be clearly unlawful. Furthermore, a right is clearly established only if there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains. This prior case law need not address a situation factually identical to that of a defendant officer, but it must provide fair warning that [the] officer's conduct would violate constitutional rights.

*Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009) (citations and internal quotation marks omitted).

The Magistrate Judge found that "the right to be free from subjection to cold temperatures while confined is clearly established and was clearly established at the time of the facts before the Court." (Doc. # 200 at 22.) Defendants object to this finding, arguing that a right cannot be "clearly established" if only found in unpublished decisions. Defendants overstate the point.

The Magistrate Judge cited three cases in deciding the law was clearly established: *Wilson v. Seiter*, 501 U.S. 294 (1991), *Mitchell v Maynard*, 80 F.3d 1433 (10th Cir. 1996), and *Despain v Uphoff*, 229 F.3d 1162. (Doc. # 200 at 22.) Of those, only *DeSpain* is unpublished. However, because the Court cannot consider unpublished decisions in deciding whether the law was clearly established,[5] the Court disregards *DeSpain* as an example of "clearly established" law.

---

[5] *Green v. Post*, 574 F.3d 1294, 1305 n.10 (10th Cir. 2009)("In determining whether the law was clearly established, we have held that we may not rely upon unpublished decisions.") (citing *Medina v. City and County of Denver*, 960 F.2d 1493, 1498-99 (10th Cir. 1992)). *Also see United States v. Lyons*, 510 F.3d 1225, 1233 n.2 (10th Cir. 2007) ("Unpublished opinions are not binding precedent.").

*Wilson and Mitchell* are both published opinions, which the Magistrate Judge cited for the proposition that warmth is a "single, identifiable human need", the deprivation of which, especially when in combination with other deprivations, may violate the Constitution. (Doc. # 200 at 22.) The Court agrees that an inmate's right to "warmth" is clearly established. That conclusion, however, does not end the inquiry.

A central point behind the "clearly established right" doctrine is notice. If the law does not put the prison official on notice that his conduct is clearly unlawful, then summary judgment based on qualified immunity is appropriate. *Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009). In addition, even if on notice of the relevant law, it may be difficult for a prison official to determine how that law may apply to the factual situation he confronts. *Saucier v. Katz*, 533 U.S. 194, 205 (2001) (overruled on other grounds). Accordingly, if "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the [qualified] immunity defense." *Id*. Thus, the "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances". *Green v. Post*, 574 F.3d 1294, 1300 (10th Cir. 2009) (citation omitted).

The circumstances in *Mitchell v. Maynard*, 80 F.3d 1433 (10th Cir. 1996) are illustrative. Although the *Mitchell* court was unsure whether the defendant-appellees had raised the issue of qualified immunity to the district court, the court nonetheless found that

> [e]ven if defendants had properly raised the defense of qualified immunity . . . it would not shield them from Mr. Mitchell's conditions of

16

>confinement claims because the alleged conditions could be found by a jury to be a violation of a clearly established constitutional right of which a reasonable person should have known.

*Id.* at 1447.

The *Mitchell* plaintiff presented evidence showing that he had been stripped naked, placed in a concrete cell, with no heat, no blankets (nor bedding of any kind), and left in that state for a period of days, perhaps longer, with outside temperatures in the 50s. *Id.* at 1442.[6] Like the plaintiff in *Mitchell*, the Plaintiff here also allegedly suffered a deprivation of warmth. But the nub is in the specifics. Plaintiff was in the dry cell for just over three days and, unlike the plaintiff in *Mitchell*, he had a blanket, mattress, and some clothing–albeit only boxers and a T-shirt. Although those conditions sound unpleasant, the Court must bear in mind that "[t]he Eighth Amendment does not mandate comfortable prisons, and conditions imposed may be restrictive and even harsh." *Barney v. Pulsipher*, 143 F.3d 1299, 1310-11 (10th Cir. 1998) (quotation marks and citation omitted). Indeed, in similar circumstances, the Tenth Circuit has found no constitutional violation. *See Hawkes v. Wyoming Dep't of Corr. Honor Conservation Camp*, 124 F.3d 216, 1997 WL 545594 (10th Cir. September 4, 1997) (unpublished) (plaintiff failed to state claim under Eighth Amendment where he alleged he was placed in a cold, unheated detention cell for five days in January); *See also Ogbolu v. McLemore*, 1997 WL 49449, at *2 (10th Cir. Feb. 7, 1997) (unpublished)

---

[6] In addition, the *Mitchell* plaintiff was deprived of his prescription eyeglasses, not allowed to leave his cell for exercise, nor given writing utensils or adequate ventilation. *Mitchell v Maynard*, 80 F.3d 1433 (10th Cir. 1996). Because these deprivations touch on human needs independent from "warmth", the Court does not consider them in the context of the instant case.

(cold, wet, drafty, and unsanitary solitary cell for two days does not violate Eighth Amendment).

The difference in facts between this case and those in *Mitchell* suggests to the Court that it would not have been clear to a reasonable person in Defendants' positions that what they were doing (or not doing) violated the law. Moreover, with a few exceptions, many of the cases cited by the parties and the Magistrate Judge – *DeSpain*, *Hawkes,* and others – are unpublished. Thus, they cannot serve as illustrations of "clearly established" law. *Green v. Post*, 574 F.3d 1294, 1305 n.10. The parties' reliance on them, however, underscores the fact there is no Tenth Circuit case on point–thus the resort to unpublished case law.

Because there is no case directly "on point", the Court finds that the at-issue right – defined by the Magistrate Judge as "the right to be free from subjection to cold temperatures while confined" – is too general a proposition to be "clearly established." For example, in Fourth Amendment jurisprudence there exists the clearly established proposition that the "use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness". *Id.* But as the Supreme Court observed, that "is not enough" to show that the right allegedly violated was clearly established. Rather, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense . . . ." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (citation omitted). Thus, "the right allegedly violated

must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Id.* (citation omitted).

In this case, Plaintiff has failed to define at the appropriate level of specificity the right or rights that Defendants allegedly violated. Moreover, given the absence of a case "on point" and that fact that "reasonable mistakes can be made" in determining the legality of conduct,[7] the Court finds that the state of the law was not established such that it would have put Defendants on notice that their conduct was clearly unlawful.

### III. CONCLUSION

Accordingly,

IT IS ORDERED that the Recommendation of the United States Magistrate Judge (Doc. # 200), is ACCEPTED IN PART AND REJECTED IN PART.

The Magistrate Judge's recommendation that be summary judgment be entered in favor of EMT Vanaman (Dalgleish) is ACCEPTED.

However, the Magistrate Judge's recommendation that summary judgment be denied as to Defendants Bier, Osagie, Barry, and Ham is REJECTED.

Accordingly, the Court ORDERS that Defendants' Motion for Summary Judgment (Doc. # 172) is GRANTED in all respects and this case be DISMISSED WITH PREJUDICE.

---

[7] *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

It is FURTHER ORDERED that the parties shall bear his, her or its own costs and attorneys' fees.

DATED:  January __28__, 2010

                                                    BY THE COURT:

                                                    _____
                                                    CHRISTINE M. ARGUELLO
                                                    United States District Judge